Colleen NUTTER, Plaintiff,

v.

Dr. Jon WEFALD, President of Kansas State University; Kansas State University; and Its Representatives, Lou Ann Smith, n/k/a Lou Ann Clintsman Thoms, and Judith E. Banks, Defendants.

No. 90–1436–SAC.

United States District Court,
D. Kansas.

March 16, 1995.

Phillips & Phillips, Chartered, Wichita, KS, for plaintiff.

Colleen M Nutter, Kirkland, WA, pro se.

Dorothy L. Thompson, Manhattan, KS, for defendant Jon Wefald.

David D. Plinsky, Office of City Atty., City of Topeka, John J. Knoll, Office of Atty. Gen., Topeka, KS, for defendant Lou Ann Smith.

Stephen K. Lester, Office of U.S. Atty., Wichita, KS, for defendant U.S. and movant Judith E. Banks.

## MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before the court on the plaintiff's "Motion for Injunction In Camera" (Dk. 81) and "Motion to Reopen Case and Vacate the Memorandum and Order" (Dk. 82). The defendants, Lou Ann Smith and Judith E. Banks, have filed responses in opposition (Dk. 84 and 85) to which the plaintiff has replied (Dk. 86 and 87). After reviewing the written materials submitted, the court believes oral argument would not assist it in deciding the central legal issues. Because the plaintiff's motions are plainly devoid of any legal merit, the court can decide them without an evidentiary hearing or oral argument.

### Procedural History

Before going to the merits of the plaintiff's motions, the court will give a brief overview of the more important proceedings in this case. This will serve not only to give the reader a background on this case but also to explain the court's reasons for issuing a serious warning to the plaintiff about her repeated filings and continued efforts to prosecute this case.

The plaintiff appearing *pro se* filed this suit in 1990 alleging civil rights and tort claims arising from her attendance at Kansas State University during the years of 1985 and 1986. In its order filed on October 28, 1992, the court summarized the plaintiff's case as follows:

> The plaintiff claims that KSU and its professors treated her wrongly in several respects, but principally in failing to accommodate her physical handicap. The plaintiff's handicap is a heart condition known as mitral valve prolapse which causes irregular heart beat and chest pains under stress. The plaintiff's primary complaint is that the instructors in the Horticultural Therapy Program at KSU failed to offer her a means by which her performance could be measured under minimal stress, such as take-home exams or alternative research projects. The plaintiff believes that as a result of the instructors' actions she received incompletes in several courses which jeopardized her financial aid, which

required her to increase her course load, and which in combination with other discriminatory actions eventually forced her to leave KSU thereby triggering her liability for the student loans.

(Dk. 66 at 2). The other part of the plaintiff's case was that the defendants, Judith Banks as a regional director with the Office of Civil Rights in the United States Department of Education and Lou Ann Clintsman Thoms as an investigating commissioner with the Kansas Commission on Civil Rights ("KCCR"), failed to properly investigate and prosecute the plaintiff's discrimination charges filed with their respective agencies.

From the start of the case, the plaintiff has asked the court to appoint her counsel who would be willing to prosecute her claims. The district court denied the plaintiff's first application for appointment of counsel. (Dk. 4). The plaintiff appealed this order to the Tenth Circuit. (Dk. 5). The Tenth Circuit dismissed her appeal for lack of jurisdiction. (Dk. 10). After the plaintiff filed a more definite statement and submitted numerous exhibits, she asked the court to reconsider appointing her counsel. (Dk. 25). Despite serious reservations caused by the apparent statute of limitations problems with the plaintiff's claims, the district court granted her request for reconsideration and appointed her an experienced and learned civil rights counsel. (Dk. 26). The court, however, provided in that appointment order if "counsel is convinced that the claim is without merit, and thus conflicts with Fed. R.Civ.P. 11, as amended, he is at liberty to withdraw as attorney of record and same will be readily entertained." (Dk. 26). Less than three months later, the appointed counsel moved to withdraw stating "[a]ppointed counsel believes that prosecution of this case would be inconsistent with the requirements of Rule 11 of the Rules of Civil Procedure." (Dk. 28). The court granted the motion to withdraw. (Dk. 29). Five days later, the plaintiff asked for appointment of another attorney and accused the appointed counsel of doing her a "great disservice." (Dk. 30). The plaintiff attached to her request a letter from her former appointed counsel in which he explained that the only claims "possibly viable" were "barred by the applicable statute of limitations." (Dk. 30). The court denied the plaintiff's request for appointment of another counsel. (Dk. 31).

During this case, the plaintiff repeatedly sought to amend her claims and allegations. The court liberally granted her requests. The plaintiff filed her first amended complaint on February 13, 1991. (Dk. 8). Treating the defendant Thoms' motion to dismiss as a motion for more definite statement, the court granted it. (Dk. 17). The court later ordered the plaintiff to file an amended complaint that incorporated what she had filed as her more definite statement. (Dk. 33). The plaintiff filed her second amended complaint on February 12, 1992. (Dk. 34). Upon leave of the court, the plaintiff filed a third amended complaint on April 2, 1992. (Dk. 39).

Concerned over delay and lack of progress in this case, the court in June of 1992 filed an order identifying certain legal issues that the parties should address by dispositive motion. (Dk. 47). The defendants thereafter filed motions to dismiss or for summary judgment. (Dks. 49, 50, and 51). The plaintiff responded to the motions and also filed a motion for supplemental pleadings. (Dk. 53). The court denied the plaintiff's motion for failure to comply with D.Kan.Rule 206(c) and (e). (Dk. 61). The plaintiff also filed a motion to amend her complaint adding as parties the four professors and two witness who were interviewed during the KCCR's investigation.[1] (Dk. 64).

On October 28, 1992, the court granted the defendants' motions for summary judgment on all of the plaintiff's claims and denied the plaintiff's motion to amend her complaint for a fourth time. (Dk. 66). In that twenty-five page order, the court fully discussed the legal grounds on which it was granting summary judgment. The clerk entered judgment for the defendants on October 28, 1992. (Dk. 67). The plaintiff filed a timely notice of appeal to the Tenth Circuit. (Dk. 69) In an order and judgment filed July 26, 1993, the Tenth Circuit in its de novo review affirmed

---

1. The plaintiff titled her proposed pleading as the third amended complaint, it would have been her fourth amended complaint had the court allowed it.

the district court on "both rulings for substantially the reasons stated in the district court's thorough and thoughtful order." (Dk. 75).

One month after the Tenth Circuit's decision, the plaintiff wrote the Honorable Patrick Kelly, Chief Judge of the United States District Courts for the District of Kansas, accusing this court of violating various constitutional rights owed to her, of ignoring certain allegations, claims and law, and of being biased and prejudiced. In response to her letter, Chief Judge Kelly filed a memorandum order observing that this court had addressed and decided each of the plaintiff's claims and that the Tenth Circuit had affirmed the district court. (Dk. 76). Chief Judge Kelly further denied all of the plaintiff's complaints advanced in her letter to him. (Dk. 76).

On January 31, 1994, the plaintiff filed a "Motion for Transfer of Case from District for Trial." (Dk. 77). In this motion, the plaintiff asked the court to transfer venue of the case "to the 9th U.S. District Court Washington so that all further proceedings in the matter including trial by jury may be held in 9th District of Washington, King County." (Dk. 77 at 4). In twenty-four separately numbered paragraphs, the plaintiff argued this court had erred in its prior rulings.[2] In sum, the plaintiff contended that a transfer of venue pursuant to 28 U.S.C. § 1404(a) would be convenient for her and her witnesses and would provide her a forum which would not conspire to deny her justice. The district court denied that motion in a twelve-page order filed March 11, 1994. (Dk. 79). The court explained that only a pending case could be transferred and that this case was not pending unless the court were to grant the plaintiff relief under Rule 60(b). The court then grouped the plaintiff's arguments of judicial error into three different categories and denied the plaintiff any relief on them. The court concluded its order offering the plaintiff some sympathy for her struggles but also admonishing her to limit her communications with the court to formal written filings:

> As with any litigation, this case has been for the parties a hardship, personally and financially. For the plaintiff, it also has been a disappointment and maybe also a bitter one if there were unrealistic hopes of success. From the start, the plaintiff faced insurmountable legal hurdles in the statutes of limitations and the limited scope of the Rehabilitation Act, 29 U.S.C. § 794. Understandably, the plaintiff did not appreciate these hurdles when she filed suit. Despite the later advice of her appointed counsel, the plaintiff pursued her claims and lost. Despite the district court's thorough summary judgment order, she appealed to the Tenth Circuit and lost. Despite the Tenth Circuit's summary order affirming this court and Chief Judge Kelly's order denying her complaint, she filed the present motion to transfer a closed case.
>
> The plaintiff's persistence is not limited to court filings. Frequently, she telephones the clerk's office in Topeka and Wichita and the judge's chambers asking for advice and sometimes badgering court staff with accusations and demands for a personal explanation of why she lost. Her conduct is just short of being abusive. As for any future communications, the court encourages the plaintiff to put them in writing and in a form suitable for filing. The court hopes that the plaintiff will understand that it is sympathetic of her difficulties but that it has rendered a final decision on her claims. The plaintiff is not entitled to any relief under Rule 60(b), and the plaintiff's case remains closed.

(Dk. 79 at 11–12).

A year later, the court has before it another attempt by plaintiff to revive a case long since expired. The defendants complain they can make little sense of the plaintiff's latest "unintelligible," "rambling," and "disjointed" filing. The defendant Banks asks the court not only to deny the plaintiff's current motions but to impose conditions that would restrict the plaintiff from repeatedly filing motions like these now pending. The plaintiff's reply brief does not address Banks' request for pleading restrictions. The court

---

2. Of the twenty-four paragraphs, the first twenty were identical to those made to Chief Judge Kelly in August of 1993 and that he denied in the order filed September 10, 1993. (Dk. 76).

will decide the plaintiff's motions first and then take up the defendant Banks' request.

**Motion for Injunction in Camera (Dk. 81).**

■ In this novel motion, the plaintiff seeks a court order keeping the defense counsel "[f]rom blocking the viewing of the complete investigative documents regarding Case No. PA 480–87, Colleen Nutter vs. State of Kansas, Kansas State University in camera 45–222(b)." Though the plaintiff's motion is subject to several different interpretations, it appears that she wants the court to entertain a claim under the Kansas Public Records Act, K.S.A. 45–216 *et seq.*, and to prevent the defendants' counsel from successfully opposing her relief under this Act. In effect, the plaintiff wants to add a claim and to keep the defendants from opposing it.

The court denies the plaintiff's motion as utterly lacking in merit. The court directed the clerk to enter final judgment for the defendants in this case over two years ago. There is no pending case. There is no pending complaint to which the plaintiff may add claims. There is no current proceeding to which the plaintiff would have any reasonable ground for asking the court to block the defendants' counsel from opposing the plaintiff's allegations. This case is closed and the plaintiff simply cannot use it now to pursue access to records developed in the state agency's investigation of her discrimination charge at the administrative level.

**Motion to Reopen Case and Vacate Memorandum and Order**

By this motion, the plaintiff hopes to persuade the court to rescind all prior orders and to have her original claims decided again on the merits. Her points offered in support of the motion, though many, are without exception either insignificant or unintelligible, and some of them even qualify as frivolous.

■ Rule 60 of the Federal Rules of Civil Procedure specifies the procedures by which a party can obtain relief from a judgment or order. Rule 60(a) applies only to clerical mistakes; none of which have been alleged here. Rule 60(b) authorizes two additional procedures: "1) a motion in the court and in the action in which the judgment was rendered, which may be filed within a 'reasonable time' after entry of the judgment; or 2) a new and independent action, which may be commenced in a court other than that which rendered the judgment." *Mason v. Judges of the U.S. Court of Appeals for the D.C. Circuit,* 952 F.2d 423, 425–26 (D.C.Cir.1991) (citations omitted), *cert. denied,* —— U.S. ——, 113 S.Ct. 92, 121 L.Ed.2d 54 (1992). The court treats the plaintiff's motion as brought under Rule 60(b).

■ Relief under Rule 60(b) is extraordinary and limited to certain exceptional circumstances. *Massengale v. Oklahoma Board of Examiners in Optometry,* 30 F.3d 1325, 1330 (10th Cir.1994); *Bud Brooks Trucking, Inc. v. Bill Hodges Trucking Co. Inc.,* 909 F.2d 1437, 1440 (10th Cir.1990). "A litigant shows exceptional circumstances by satisfying one or more of Rule 60(b)'s six grounds."[3] *Van Skiver v. United States,* 952

---

**3.** The exceptional circumstances enumerated in Rule 60(b) are:

"On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided in Title 28, U.S.C., § 1655, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, audita querela, and bills of review and bills in the nature of a bill

F.2d 1241, 1243–44 (10th Cir.1991), *cert. denied*, —— U.S. ——, 113 S.Ct. 89, 121 L.Ed.2d 51 (1992). Not a substitute for a direct appeal, a rule 60(b) motion addresses matters outside the issues on which the judgment was entered. *Brown v. McCormick*, 608 F.2d 410, 413 (10th Cir.1979). It is not the opportunity for the court to revisit the issues already addressed in the underlying order or to consider arguments and facts that were available for presentation in the underlying proceedings. *Van Skiver v. United States*, 952 F.2d at 1243.

■ A rule 60(b) motion triggers consideration of the established policy in favor of final judgments. *See Lee v. Village of River Forest*, 936 F.2d 976, 978 (7th Cir.1991) ("strong policy favoring the finality of judgments"). Rule 60(b) " 'seeks to strike a delicate balance between two countervailing impulses: the desire to preserve the finality of judgments and the "incessant command of the court's conscience that justice be done in light of *all* the facts." ' " *Cessna Finance Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444 (10th Cir.1983) (quoting *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 401 (5th Cir.1981) ((quoting in turn *Bankers Mortgage Co. v. United States*, 423 F.2d 73, 77 (5th Cir.), *cert. denied*, 399 U.S. 927, 90 S.Ct. 2242, 26 L.Ed.2d 793 (1970))). The district court has substantial discretion in deciding a Rule 60(b) motion. *Pelican Production Corp. v. Marino*, 893 F.2d 1143, 1145–46 (10th Cir.1990). The court abuses its discretion when its actions are arbitrary, capricious, whimsical, without reason, or biased. *Id.*

■ All but one of the plaintiff's arguments merit no discussion. Many are mere copies of arguments already decided in earlier orders. Others ignore the court's conclusive ruling that the plaintiff's claims were barred under the different statutes of limitations. (Dk. 66). Others are now rehashed under the nebulous allegations of a civil conspiracy. Still others, such as the availability and adequacy of the judge's library for private litigants, are nonsensical. The exception is what the plaintiff calls new evidence.

This consists of Department of Education notices sent to the plaintiff in an effort to collect on her student loans. The plaintiff considers these notices to be "new evidence of the damages." (Dk. 82 at 6).

■ To satisfy the requirements for relief under Rule 60(b)(2), the plaintiff must demonstrate " '(1) the evidence was newly discovered since the trial; (2) [the moving party] was diligent in discovering the new evidence; (3) the newly discovered evidence could not be merely cumulative or impeaching; (4) the newly discovered evidence [was] material; and (5) that a new trial, with the newly discovered evidence[, will] probably produce a different result.' " *Joseph v. Terminix Intern. Co.*, 17 F.3d 1282, 1285 (10th Cir.1994) (quoting *Graham v. Wyeth Labs.*, 906 F.2d 1399, 1416 (10th Cir.), *cert. denied*, 498 U.S. 981, 111 S.Ct. 511, 112 L.Ed.2d 523 (1990)). Evidence regarding the Department of Education's subsequent efforts to collect on the plaintiff's student loans is not material to and would have no effect on the court's summary judgment rulings. In particular, this evidence has no relevance in deciding whether the plaintiff's claims were barred under the different statutes of limitations. Consequently, the plaintiff has not shown she is entitled to relief under Rule 60(b)(2).

**Request for Conditions on Future Filings**

The defendant Banks comments on the time and effort expended by the court, counsel and defendants in litigating this case. Banks urges the court "not to simply deny the motions filed by Ms. Nutter, but to take action to prevent the continual filing of pleadings as are now before the Court." (Dk. 85 at 2). The defendant Banks, however, does not recommend what judicial action should be taken or what proposed conditions would be appropriate and effective here.

The court agrees with Banks that this case has been a drain on the court, counsel, and parties. The plaintiff's repeated filing of frivolous matters and badgering telephone calls to the clerk's office and to the judge's

of review, are abolished, and the procedure of obtaining any relief from a judgment shall be

by motion as prescribed in these rules or by an independent action."

chambers[4] have unduly taxed the court's limited resources and time, as well as, worn thin the court's patience. Despite the court's statement more than a year ago to limit her communications with the court to written filings, the plaintiff's telephone calls persist. The time has come for the court to issue the plaintiff a serious warning.

" '[T]he right of access to the courts is neither absolute nor unconditional, and there is no constitutional right of access to the courts to prosecute an action that is frivolous or malicious.' " *In re Winslow*, 17 F.3d 314, 315 (10th Cir.1994) (quoting *Tripati v. Beaman*, 878 F.2d 351, 353 (10th Cir.1989) (citation omitted)). A litigant can abuse the privilege of proceeding in forma pauperis and the privilege of leniency afforded pro se litigants. *DePineda v. Hemphill*, 34 F.3d 946, 948 (10th Cir.1994). An example of such abuse is when the claims arising from a particular event are finally resolved but the pro se litigant continues to raise them in related proceedings or other litigation. *DePineda*, 34 F.3d at 948. To curb such abuses, courts will resort to filing restrictions. *See, e.g., DePineda*, 34 F.3d at 948; *Werner v. State of Utah*, 32 F.3d 1446, 1448–49 (10th Cir.1994); *In re Winslow*, 17 F.3d at 316.

Though the current circumstances may warrant imposing such conditions, the court now will stop short of doing that. The court, however, strongly admonishes the plaintiff that before she files another document in this case she realize that her claims have been finally decided as a matter of law, that Rule 60(b) standards govern any matters hereafter filed, that a Rule 60(b) motion is not an opportunity for the court to revisit issues that have been or were necessarily decided in prior rulings, that successive Rule 60(b) motions are discouraged, and that relief under Rule 60(b) is limited to extraordinary circumstances. In addition, the court admonishes the plaintiff that she should refrain from telephoning the court's chambers or the clerk's office regarding this case or any other

related matter. By this order, the court directs its staff and the clerk's office that if the plaintiff telephones they need only ask if the plaintiff has any legitimate procedural questions and if none are promptly asked, then they may immediately end the conversation. The court would hope that the plaintiff will refrain from calling so that the judicial staff is not placed in the awkward position of enforcing this directive. Should the plaintiff not heed these admonitions, the court on its own shall consider imposing additional conditions and sanctions on the plaintiff.

IT IS THEREFORE ORDERED that the plaintiff's "Motion for Injunction In Camera" (Dk. 81) and "Motion to Reopen Case and Vacate the Memorandum and Order" (Dk. 82) are denied;

IT IS FURTHER ORDERED that the defendant Banks' request (Dk. 85) for restrictions on future filings by the plaintiff is granted to the extent stated herein.

---

4. The court's census shows that the plaintiff called the chambers or the clerk's office more than seventeen times over the last year. During these conversations, the plaintiff typically attempts to argue the merits of her claims, to denigrate the court's fairness, to complain about

her current financial conditions, to ask when she will receive a hearing or trial, and to question the staff about various substantive legal issues. As related to the court, the staff has found the plaintiff to be petulant and agitated during these conversations.